JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Craig Benjamin appeals his convictions for felonious assault and resisting arrest. He assigns the following errors for our review:
 "I. The prosecutor engaged in misconduct during closing argument to the extent that it affected the outcome of the case and denied Craig Benjamin a fair trial."
 "II. The court's refusal to allow introduction of evidence of police officer's disciplinary files was unfairly prejudicial to the defense."
 "III. Craig Benjamin's convictions were based on insufficient evidence and against the manifest weight of the evidence."
 "IV. Blakely v. Washington dictates that the only allowable sentence is the minimum sentence."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Benjamin's convictions. The apposite facts follow.
 {¶ 3} Benjamin was indicted in two separate cases regarding the same incident. In CR-470685, the Cuyahoga County Grand Jury indicted Benjamin for two counts of felonious assault and two counts of resisting arrest. In CR-473547, the Grand Jury indicted Benjamin for two counts of drug trafficking, one count of drug possession, and one count of possession of criminal tools. Both cases were tried together.
 {¶ 4} On September 10, 2005, Cleveland officers conducted a controlled buy at the Burger King located at 7500 Detroit Road. The officers used a confidential reliable informant ("CRI") to conduct the transaction. The CRI contacted an individual from whom he had previously purchased drugs. The CRI agreed to meet the dealer in the Burger King parking lot. A van, driven by Benjamin, pulled into the parking lot. The CRI, who was wearing a wire, got into the van in order to make the purchase. The CRI made the purchase, exited the van, and gave the officers the signal that the transaction had been completed.
 {¶ 5} Detective Pitts, who was monitoring the transaction, informed the take down unit that the transaction was complete. As Benjamin attempted to drive from the parking lot, his van was surrounded by unmarked police cars. Detective Moran pulled behind the van, and Detective Schroeder pulled in front of the van in an attempt to box Benjamin in. In conjunction with these vehicles, Detectives Kelly and Mendoza also pulled in their vehicles at an angle in an effort to box the van in.
 {¶ 6} In spite of being surrounded, Benjamin floored the gas pedal of the van, put it in reverse and rammed his vehicle into Detective Moran's vehicle. While he did this, Benjamin's passenger exited the van and fled and was never captured. Benjamin then put the car in drive and smashed into Detective Schroeder's vehicle. Detectives Kelly and Mendoza exited their vehicles and approached with guns drawn and ordered Benjamin from the vehicle. Benjamin refused to exit the vehicle and continued to try to ram his way out.
 {¶ 7} Detective Mendoza approached the driver's side door and attempted to pull Benjamin out of the car. Benjamin is 6 feet tall and in excess of 270 pounds, therefore, the detective was unsuccessful in his attempts to pull him from the car. While trying to get Benjamin out, however, the officer's arm was slammed in the driver's side door of the van. Officer Kelly smashed the front window of the van with a crowbar in an effort to get Benjamin to comply with police orders; however, Benjamin continued to try to flee.
 {¶ 8} It took three detectives to eventually pull Benjamin from the car and secure him with handcuffs. In the process of assisting in the arrest, Detective Volk was head-butted by Benjamin.
 {¶ 9} As a result of Benjamin's actions, Detective Schroeder suffered a cervical sprain and missed two weeks of work. Detective Volk suffered a bruise on his forehead, and Detective Mendoza's arm was bruised.
 {¶ 10} The jury found Benjamin guilty of the felonious assault of Detective Schroeder, resisting the arrest by Detective Mendoza, and the two counts of drug trafficking. The jury acquitted Benjamin of the felonious assault of Detective Moran, resisting the arrest by Detective Volk, drug possession, and possession of criminal tools. The trial court sentenced Benjamin to a total sentence of six years in prison.
 Prosecutorial Misconduct {¶ 11} In his first assigned error, Benjamin contends the prosecutor engaged in misconduct by calling into question the defense attorney's integrity and alluding to the fact that Benjamin did not testify.
 {¶ 12} A prosecuting attorney's conduct during trial does not constitute grounds for error unless the conduct deprives the defendant of a fair trial.[1] The touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.[2] The effect of the prosecutor's misconduct must be considered in light of the whole trial.[3] A prosecutor is afforded wide latitude during closing argument; it is within the trial court's sound discretion to determine whether a comment has gone too far.[4]
 {¶ 13} Benjamin contends the prosecutor indirectly referred to the fact he did not testify by asking the jury whether they were going to believe the detectives or defendant, a drug dealer. However, we do not conclude this was in reference to Benjamin's decision to not testify. Instead, in making this remark, the State was alluding to the comments made by defense counsel in opening statement, where defense counsel stated that Benjamin reacted the way he did because he believed he was being car-jacked. Therefore, the prosecutor's comment was not an indirect comment on Benjamin's failure to testify.
 {¶ 14} Benjamin also contends the State attacked the integrity of defense counsel in its rebuttal closing argument. He refers to the State's comments regarding nominating defense counsel for an Academy Award, comparing defense counsel's tactics to those of a salesperson, and stating that defense counsel's job is to get drug dealers off, while the State's job is to prosecute them. However, the State's comments were in response to defense counsel's remarks during his closing argument. Defense counsel had continually commented the officers were reading off a script, alluded to the fact they should be awarded an Academy Award, and impugned the integrity of the prosecutor's office. Therefore, defense counsel invited comment and cannot now complain about inappropriate rebuttal.[5] An otherwise inappropriate comment by a prosecutor in rebuttal argument may be proper where it is an "invited response" to defense counsel's summation.[6]
 {¶ 15} Moreover, we find the prosecutor's comments, even if improper, were not prejudicial. There was sufficient evidence presented to prove the elements of Benjamin's convictions without the aid of these remarks. Thus, no prejudicial error occurred. Accordingly, Benjamin's first assigned error is overruled.
 Officer's Disciplinary Files {¶ 16} In his second assigned error, Benjamin argues the trial court erred by refusing to allow him to cross-examine Officer Kelly regarding his disciplinary record for the purpose of impeachment. We disagree.
 {¶ 17} A reviewing court will not reverse a trial court's ruling on the scope of cross-examination absent an abuse of discretion.[7] "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable * * *."[8]
 {¶ 18} In the instant case, Benjamin sought to introduce evidence of Officer Kelly's disciplinary record of excessive force and one theft allegation in an attempt to impeach his credibility during cross-examination. However, upon reviewing the officer's record, the trial court found all the allegations except for one regarding excessive force were unsubstantiated. That allegation was later dismissed as unsubstantiated. Therefore, none of the alleged conduct was substantiated in any form.
 {¶ 19} Further, this court in State v. Harrison[9] found that information revealing that the officer had been reprimanded in an unrelated past incident, was not relevant to the case and would lead to distracting inquiry. Likewise, in the instant case, inquiring into the unsubstantiated charges against the officer was irrelevant to the case and would have been distracting. Accordingly, Benjamin's second assigned error is overruled.
 Sufficiency/Manifest Weight {¶ 20} In his third assigned error, Benjamin argues his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. We disagree.
 {¶ 21} The sufficiency of the evidence standard of review is set forth in State v.
 Bridgeman[10] "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[11]
 {¶ 22} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[12] in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 23} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As the Ohio Supreme Court held in State v. Thompkins[13]
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Blacks, supra, at 1594.
 "* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 {¶ 24} Benjamin argues his drug trafficking conviction was based on insufficient evidence because the informant did not testify and the officers did not witness the events that occurred inside the van. When arrested, Benjamin did not have drugs or the marked money on his person. He did have $850 in cash.
 {¶ 25} The officers testified that the informant was searched prior to purchasing the drugs. After he left the van, he gave officers the crack cocaine he purchased. An audio tape of the drug buy was also played in court. The CRI is heard negotiating the purchase of an "eight ball" of crack cocaine, which is the amount of crack cocaine found on his person. The officers also stated they observed Benjamin driving the van in which the drugs were purchased and that the van was the target of their drug bust as it was observed during previous drug buys. The fact that the dealer who actually engaged in the transaction fled the scene does not make Benjamin less culpable for his involvement.
 {¶ 26} Benjamin also argues there was insufficient evidence that he committed felonious assault against Detective Schroeder because the contact between his vehicle and the officer's was moderate. However, the detectives testified that Benjamin rammed Detective Schroeder's jeep with such force that his tires squealed and produced smoke and skid marks. Detective Schroeder described the impact as being "very hard" and that Benjamin continued to attempt to push his jeep out of the way after the crash. Detective Schroeder also testified that he suffered a sprain to his neck as a result of the collision and that he still suffered from limited movement and pain at the time of trial. Therefore, there was evidence presented which supported Benjamin's conviction for felonious assault. Accordingly, Benjamin's third assigned error is overruled.
 Nonminimum Sentence {¶ 27} In his fourth assigned error Benjamin argues that "because [State v. Foster] is so recent and in abundance of caution, counsel argues that the holdings in Blakely and Booker mandate a minimum sentence for Benjamin of two years." This quote constitutes Benjamin's entire argument for this assigned error.
 {¶ 28} In putting forth this argument, Benjamin's counsel failed to cite to any authority or basis for this claim. At oral argument, counsel admitted that he did not have an argument in support of this error, but merely raised it to preserve any issues relating to sentencing that may arise in case law established post-Foster. He admitted he was not arguing that Foster constituted an ex post facto application of the law.
 {¶ 29} An appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority or reason in support of an argument as required by App.R. 16(A)(7).[14] "If an argument exists that can support this assignment of error, it is not this court's duty to root it out."[15]
 {¶ 30} Moreover, the Ohio Supreme Court in State v. Foster,[16]
relying on the United States Supreme Court decisions of Blakely v.Washington[17] and United States v. Booker,[18] clearly excised that part of the sentencing statute regarding minimum sentences as being unconstitutional. Therefore, there is no longer a presumption of a minimum sentence. In addition, Benjamin was not entitled to a presumption of a minimum sentence under S.B. 2 because he was not a first time offender. Accordingly, Benjamin's fourth assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREEZE, JR., A. J., and JAMES J. SWEENEY, J., CONCUR
[1] State v. Keenan (1993), 66 Ohio St.3d 402, 405; State v. Gest
(1995), 108 Ohio App.3d 248, 257.
[2] Smith v. Phillips (1982), 455 U.S. 209.
[3] State v. Durr (1991), 58 Ohio St.3d 86, 94; State v. Maurer
(1984), 15 Ohio App.3d 239, 266.
[4] State v. Benge (1996), 75 Ohio St.3d 136.
[5] State v. Kelly, Cuyahoga App. No. 79499, 2002-Ohio-972; State v.Lamb, 12th Dist. Nos. CA2002-07-171, CA2002-08-192, 2003-Ohio-3870;State v. Kelly, 1st Dist. No. C-010639, 2002-Ohio-6246.
[6] State v. Brown (1988), 38 Ohio St.3d 305, 316-317.
[7] State v. Slagle (1992), 65 Ohio St.3d 597, 605.
[8] State v. Adams (1980), 62 Ohio St.2d 151, 157.
[9] (Aug. 22, 1996), Cuyahoga App. No. 69821.
[10] (1978), 55 Ohio St.2d 261, syllabus.
[11] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Davis (1988), 49 Ohio App.3d 109, 113.
[12] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[13] 78 Ohio St.3d 380, 386-387, 1997-Ohio-52.
[14] Meerhoff v. Huntington Mortgage Co. (1995), 103 Ohio App.3d 164,169; State v. Chilcutt, 3rd Dist. Nos. 3-03-16, 3-03-17,2003-Ohio-6705; Clark-Wise v. Abboud (Jan. 9, 2000), 9th
Dist. No. 2909-M; City of Bedford Heights v. Singer (Oct. 9, 1997), Cuyahoga App. No. 71740,
[15] Cardone v. Cardone (May 6, 1998), Summit App. Nos. 18349 and 18673.
[16] 109 Ohio St.3d 1, 2006-Ohio-856.
[17] (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed. 2d 403.
[18] (2005), 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621.